UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHERRIE HAMER,                          )
                                        )
              Plaintiff,                )
                                        )
       v.                               )        No.  4:14 CV 1371 JMB
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social Security, )
                                        )
              Defendant.                )

## MEMORANDUM AND ORDER

This action is before the Court, pursuant to the Social Security Act ("the Act"), 42 U.S.C.

§§ 401, *et seq.*, authorizing judicial review of the final decision of the Commissioner of Social

Security (the "Commissioner") denying Plaintiff Sherrie Hamer's application for Supplemental

Security Income ("SSI").  All matters are pending before the undersigned United States

Magistrate Judge with consent of the parties, pursuant to 28 U.S.C. § 636(c).  The matter is fully

briefed, and for the reasons discussed below, the Commissioner's decision is affirmed.

## I.      Procedural History & Summary of Case

In December 2008, Plaintiff filed an application for SSI benefits, alleging disability

beginning in October 2002.  On September 10, 2010, an Administrative Law Judge ("ALJ")

denied the application.  (Tr. 62-71)[1]  On November 5, 2010, Plaintiff filed another application

for SSI benefits.  That claim was denied at the initial level, and by a different ALJ at the hearing

level.  (Tr. 12-22)  The ALJ concluded that Plaintiff could not return to her past relevant work.

(Tr. 20)  Based on hypothetical questions posed to a vocational expert ("VE"), the ALJ found

_____

[1] References to "Tr." are to the administrative record filed by the Commissioner in this matter.

that Plaintiff was not under a disability within the meaning of the Act because she could perform other representative occupations that existed in substantial numbers in the national economy, such as surveillance system monitor and call out operator. (Tr. 21)

The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner in this matter. Plaintiff filed the instant action on August 6, 2014. Accordingly, Plaintiff has exhausted her administrative remedies and the matter is properly before this Court. Plaintiff has been represented by counsel throughout all relevant proceedings. Unless otherwise noted, all references to the ALJ or hearing refer to Plaintiff's November 2010 application for SSI benefits.

In her brief to this Court, Plaintiff raises four issues. First, Plaintiff argues that the ALJ's Residual Functional Capacity ("RFC") assessment lacked a substantial evidentiary basis in the record due to an error in addressing the medical evidence. [ECF No. 20 at 3-4] Second, Plaintiff contends that the ALJ failed to provide sufficient, specific reasons for an adverse determination of Plaintiff's credibility. [Id. at 4-5] Third, Plaintiff argues that the VE's testimony regarding the available jobs for Plaintiff was flawed. [Id. at 5-7] Fourth, Plaintiff contends that the overall decision of the ALJ was contrary to the weight of the evidence in the record. [Id. at 7-8] The Commissioner filed a detailed brief in opposition. [ECF No. 30][2]

As explained below, the Court has considered the entire record in this matter, including the supplemental records presented to the Appeals Council. Because the decision of the Commissioner is supported by substantial evidence and contains no legal error, it will be affirmed.

---

[2] Plaintiff also filed a motion to compel the Commissioner to supplement the record, identifying records Plaintiff's counsel submitted to the Appeals Council after the ALJ's decision denying her SSI application. [ECF No. 19] The Commissioner did not oppose the motion to supplement and has, in fact, submitted the supplemental records requested. [ECF Nos. 21, 22]

## II.    The ALJ's Decision

In a decision dated December 12, 2012, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  (Tr. 12-22)  Consistent with testimony from a VE, the ALJ found that Plaintiff retained the RFC to perform the requirements of representative occupations such as surveillance system monitor and call out operator.  (Tr. 21)  In arriving at her decision, the ALJ followed the required five-step inquiry.

At step one, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since her application date.  (Tr. 14)  At step two, the ALJ found Plaintiff had the following severe impairments:  (1) diabetes with neuropathy; (2) obesity; and (3) depression.  (Id.)  Regarding an alleged shoulder impingement issue, hypertension, and disc disease, the ALJ found those impairments to be non-severe.  (Id.)  At step three, the ALJ concluded that none of Plaintiff's impairments, whether considered singly or in combination, meets one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 15-16)

At step four, the ALJ reviewed the entire record and concluded that Plaintiff retained the RFC to perform "sedentary work," with the following additional restriction – she "is limited to performing simple, repetitive tasks."  (Tr. 16)  In arriving at this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [those] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment."  (Tr. 19)  The ALJ noted, for example, that Plaintiff's daily activities were "not limited to the extent one would expect, given [Plaintiff's] complaints of disabling symptoms and limitations."  (Id.)  Likewise, the ALJ found that Plaintiff received routine and conservative treatment, which was inconsistent with someone who claims to be

totally disabled.  (Id.)  Similarly, the ALJ observed that Plaintiff's treatment was "generally effective when she is compliant."  (Tr. at 19-20)  Moreover, despite Plaintiff's complaints of "disabling symptoms," there were instances where Plaintiff was not compliant with her diet or medication regimen.  (Tr. 20)  The ALJ also noted that none of Plaintiff's treating or examining physicians provided any opinion that Plaintiff was disabled or suffered limitations greater than those found by the ALJ.  (Id.)  Nor did any of Plaintiff's treating doctors place any restrictions on Plaintiff.  To the contrary, the ALJ noted that Plaintiff's primary care doctor actually directed her to walk daily.  (Id.)

In determining Plaintiff's RFC, the ALJ also gave great weight to the opinions of two consulting sources – Drs. Raymond Leung and Paul Rexroat.  Dr. Leung completed a physical examination and Dr. Rexroat completed a psychiatric examination.  (Tr. 20)  Dr. Leung examined Plaintiff after the administrative hearing in this matter, while Dr. Rexroat examined her prior to the hearing.  (Tr. 341, 361)  The ALJ considered, but gave little weight to, the opinions of Plaintiff's friends and relatives.  (Id.)

Also at step four, with the assistance of a VE's testimony, the ALJ concluded that the demands of Plaintiff's past relevant work exceeded her current RFC.  At step five, also based on the VE's testimony, the ALJ found that there are jobs existing in the national economy that Plaintiff can still perform, including surveillance system monitor and call out operator.  (Tr. 21) Accordingly, the ALJ held that, "considering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of 'not disabled' is therefore appropriate …."  (Tr. 22)

### III.    Administrative Record

The administrative record in this matter includes a substantial volume of medical and other records.  The Court has considered the entire record.  The following is a summary of pertinent portions of the record.

#### A.    The Hearing Before the ALJ

The ALJ conducted a hearing on September 18, 2012.  Plaintiff was present and represented by an attorney.  (Tr. 27-57)  Also present was a vocational expert ("VE"), Delores Gonzalez.  Both Plaintiff and the VE testified under oath.  At the outset of the hearing, Plaintiff's attorney provided a short opening statement.  Counsel stated that Plaintiff had "confirmed uncontrolled diabetes, … significant problems with the use of her right shoulder, … and neuropathy."  (Tr. 31)  Counsel also noted that a prior ALJ had limited Plaintiff to "no more than sedentary work."  (Id.)  Counsel further represented that Plaintiff cannot use her upper dominant extremity on a frequent basis.  (Id.)  Finally, counsel represented that Plaintiff's impairments did not meet any listing.  (Id.)

##### 1.    Plaintiff's Testimony

Plaintiff testified that she was 44 years old, did not graduate high school, had not passed a GED exam, and lacked any vocational training.  (Tr. 32-34)  Plaintiff stated that she stopped looking for work due to diabetes, depression, and pain in her legs and feet.  (Tr. 35)  Plaintiff stated that she is able to drive short distances, but complained of pain in her feet and shoulders. (Tr. 33)

Plaintiff described her prior work experience, which included working as a pad printer, as a home health aide, at a Dollar General store, and inserting parts on computer circuit boards. (Tr. 35-38)  Plaintiff last worked in 2007 during which time she briefly worked for a temp

agency.  Plaintiff testified that she cannot work now because of her diabetes, swelling in her legs and feet, right shoulder pain, depression, anxiety, and bipolar disorder.  (Tr. 39)  Plaintiff described the medications she takes for her various conditions.  (Tr. 39-40)  She advised that, despite her medications, her blood sugar level remained uncontrolled.  (Tr. 40)

Regarding her right shoulder condition, Plaintiff explained that she is right-handed and that her condition came on suddenly, after she heard a "loud pop."  (Tr. 41)  Plaintiff described her pain as if "the bones [were] literally grinding," resulting in shooting pain down her arm.  (Tr. 45)  Plaintiff testified that she has been diagnosed with a frozen shoulder, but she could not afford the therapy necessary to correct her problem.  (Id.)

Plaintiff testified that she had problems standing and walking, and that she uses a cane periodically.  (Tr. 41)  She was not prescribed a cane by a doctor.  (Tr. 41-42)  Plaintiff testified she could walk between 25 and 40 feet with her cane, and can sit for about 30 minutes at a time.  (Tr. 42)  She testified that the most she could lift was a "can of soup," but that she also can lift a gallon of milk, "but it hurts."  (Tr. 43)  Plaintiff explained that she experienced numbness in her fingers as well.  (Tr. 43-44)  Plaintiff also stated that she regularly experienced blurry vision.  (Tr. 46)  Plaintiff also described a long-term psychological disorder which compels her to pull hair from her lower legs, particularly when she is upset or experiencing anxiety.  (Tr. 47-48)  At the time of her testimony, Plaintiff had seen a psychiatric specialist only one time.  (Tr. 48)

For a typical day, Plaintiff would fold laundry, take her dogs in the backyard and sit on the steps.  She would also watch television and read.  Plaintiff's teenage daughter would assist her with various tasks.  (Tr. 43-44)

### 2.    Vocational Expert's Testimony

The vocational expert ("VE"), Delores Gonzalez, was present throughout Plaintiff's

testimony.  The VE first reviewed and characterized Plaintiff's past work.  (Tr. 51-52).  The VE specifically considered the requirements of fingering, handling, and reaching for Plaintiff's past work.  (Id.)

The ALJ asked the VE a hypothetical question based on a claimant of the same age, education, and work experience as Plaintiff.  The VE further limited the hypothetical claimant to sedentary work with a further limitation that the person could only perform simple, repetitive tasks and would be limited to occasional fingering and handling with both upper extremities.  (Tr. 52)  The VE opined that such a claimant would not be able to return to Plaintiff's past work.  (Id.)   The VE further opined, however, that such a claimant would be able to perform other work that exists in substantial numbers in the regional and national economy.  In particular, the VE identified two representative jobs – surveillance system monitor (DOT # 379.367-010), and call out operator (DOT # 237.367-014).  (Tr. 53)  According to the VE, both representative jobs are sedentary and unskilled.  The surveillance job requires no handling, fingering, reaching or feeling.  The call out operator job requires only occasional reaching, handling or fingering.  (Id.)

The ALJ then asked the VE to consider a hypothetical claimant with the previously identified limitations, as well as a restriction such that the person would only have occasional interaction with supervisors, co-workers, and the public.  (Id.)  According to the VE, the additional restriction would eliminate the call out operator job, but not the surveillance system monitor job.  (Id.)  The ALJ then asked the VE to add another limitation such that the hypothetical claimant was off task, unpredictably, for fifteen minutes at a time.  According to the VE, such a limitation would eliminate all work.  (Tr. 54)

The VE testified that her answers were consistent with the "Dictionary of Occupational Titles."

Plaintiff's attorney questioned the VE as to whether the surveillance system monitoring position was classified as a skilled or unskilled position. (Tr. 54-55) The VE held fast to her position that the position was unskilled. (Tr. 55)

### B.   Medical Records and Source Opinion Evidence

The ALJ summarized the medical evidence in the record at the time of the decision. (Tr. 17-20) The Appeals Council considered additional medical records Plaintiff submitted after the ALJ's decision. These records included a mental RFC questionnaire, completed by Dr. John Crain, M.D., as well as additional records from Dr. Crain. (Tr. 388-401) Because Dr. Crain's records involved information regarding a later time, the Appeals Council concluded that those records did not affect the ALJ's decision. (Tr. 2) The Appeals Council advised that, if Plaintiff desired the Commissioner to consider whether she was disabled at this later time, she would need to file a new application. (Id.)

The remainder of the relevant medical record and medical source opinion evidence will be discussed in more detail below, as part of the Court's analysis of the arguments raised by Plaintiff herein.

## IV.   Standard of Review and Analytical Framework

"To be eligible for SSI benefits, [Plaintiff] must prove that she is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During this process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)). See also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1.    The credibility findings made by the ALJ.
2.    The claimant's vocational factors.
3.    The medical evidence from treating and consulting physicians.
4.    The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5.    Any corroboration by third parties of the claimant's impairments.
6.    The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

See Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## V.    Analysis of Issues Presented

In her brief, Plaintiff raises four issues. First, Plaintiff argues that the ALJ's Residual Functional Capacity ("RFC") assessment was not based on substantial evidence due to an error

or errors in addressing the medical evidence.  Second, Plaintiff contends that the ALJ failed to

provide sufficient, specific reasons for an adverse determination of Plaintiff's credibility

regarding the severity of her symptoms.  Third, Plaintiff argues that the VE's testimony at step

five, regarding the available jobs for Plaintiff, was flawed for several reasons.  Finally, Plaintiff

contends that the overall decision of the ALJ was contrary to the weight of the evidence in the

record.  On this last point, Plaintiff relies on evidence submitted to the Appeals Council after the

ALJ's decision.

As explained below, the Court finds substantial evidence in the record as a whole

supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Act.

Therefore, the Commissioner's decision is affirmed.

**A.      The ALJ's Adverse Credibility Determination**

The Court first addresses the ALJ's adverse credibility determination.  An evaluation of

Plaintiff's credibility is necessary to a full consideration of the ALJ's RFC determination.  <u>See</u>

<u>Wildman</u>, 596 F.3d at 969 (explaining that an "ALJ's determination regarding [a claimant's]

RFC was influenced by [the ALJ's] determination that [claimant's] allegations were not

credible") (citing <u>Tellez v. Barnhart</u>, 403 F.3d 953, 957 (8th Cir. 2005)).  Moreover, the Eighth

Circuit has instructed that, in the course of making an RFC determination, the ALJ is to consider

the credibility of a plaintiff's subjective complaints in light of the factors set forth in <u>Polaski v.</u>

<u>Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984).  <u>See</u> <u>also</u> 20 C.F.R. §§ 404.1529, 416.929.  The

factors identified in <u>Polaski</u> include:  a plaintiff's daily activities; the location, duration,

frequency, and intensity of his symptoms; any precipitating and aggravating factors; the type,

dosage, effectiveness, and side effects of her medication; treatment and measures other than

medication she has received; and any other factors concerning her impairment-related

limitations.  See Polaski, 739 F.2d at 1322.  An ALJ is not required to discuss each Polaski factor

and how it relates to a plaintiff's credibility.  See Partee v. Astrue, 638 F.3d at 860, 865 (8th Cir.

2011) (stating that "[t]he ALJ is not required to discuss methodically each Polaski consideration,

so long as he acknowledged and examined those considerations before discounting a [plaintiff's]

subjective complaints") (internal quotation and citation omitted); Samons v. Astrue, 497 F.3d

813, 820 (8th Cir. 2007) (stating that "we have not required the ALJ's decision to include a

discussion of how every Polaski factor relates to the [plaintiff's] credibility").

       This Court reviews the ALJ's credibility determination with deference and may not

substitute its own judgment for that of the ALJ.  "The ALJ is in a better position to evaluate

credibility, and therefore we defer to her determinations as they are supported by sufficient

reasons and substantial evidence on the record as a whole."  Andrews, 791 F.3d at 929 (citing

Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)).  See also Gregg v. Barnhart, 354 F.3d 710,

713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and

gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's

credibility determination").  In this case, the ALJ gave good reasons for discounting Plaintiff's

credibility.  Accordingly, the Court will defer to the ALJ in this regard.

       Plaintiff contends that the ALJ failed to give sufficient reasons for the adverse credibility

finding because the ALJ allegedly mischaracterized the evidence.  In particular, Plaintiff

contends that the ALJ mischaracterized the evidence regarding her compliance with medications

and medical advice.  [ECF No. 20 at 4-5][3]  Upon a review of the entire record, however, the

---

[3]  Plaintiff does not raise any other significant issue regarding the details outlined in the ALJ's
adverse credibility findings.  Plaintiff has not identified any deficiencies regarding the ALJ's
consideration of other factors addressed by the ALJ such as, for example, Plaintiff's daily
activities, the conservative nature of her treatment, or the lack of any physician imposed
restrictions.

Court concludes that the ALJ's credibility determination did not, in fact, mischaracterize the evidence regarding Plaintiff's compliance.

Although the ALJ did not specifically mention <u>Polaski</u> and methodically apply each of the factors, it is clear that the ALJ's decision did, in fact, comply with the <u>Polaski</u> rubric. More importantly to the present case, the ALJ's adverse credibility determination did not turn solely on Plaintiff's compliance with her medication and medical advice. In fact, Plaintiff's compliance was but one of many factors the ALJ properly considered in this assessing Plaintiff's credibility.

The ALJ noted that Plaintiff's daily activities were not consistent with her claims of disabling limitations. Plaintiff was able to drive regularly, perform light housework, and prepare simple meals. (Tr. 19) The ALJ further noted that Plaintiff's actual medical treatment was routine and conservative in nature, which was inconsistent with her claims of disabling symptoms and limitations. (<u>Id</u>.) As for her mental health, the ALJ noted that Plaintiff never sought treatment from any specialist and that there had been no periods of even brief decompensation. (Tr. 20)[4] Moreover, the ALJ observed that no treating or examining source ever indicated that Plaintiff was disabled or experienced limitations greater than those reflected in the ALJ's RFC determination. (<u>Id</u>.) Likewise, none of Plaintiff's treating sources ever placed any significant restrictions on Plaintiff. To the contrary, her primary care physician wanted her to increase her physical activity level by walking daily. (<u>Id</u>.) Furthermore, the opinions of two consultative examiners were inconsistent with Plaintiff's claims of disabling limitations. (<u>Id</u>.)

Therefore, even if the Court were to conclude that the ALJ somehow mischaracterized the evidence of Plaintiff's non-compliance, there would remain substantial evidence and good

---

[4] <u>See</u> <u>Whitman v. Colvin</u>, 762 F.3d 701 (8th Cir. 2014) (explaining that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem") (internal quotations omitted).

reasons for the ALJ's adverse credibility determination. Moreover, the ALJ never stated that Plaintiff was completely non-compliant. Rather, the ALJ correctly noted that "there have been significant periods of time … during which [Plaintiff] has not been compliant with diet or medication." (Tr. 20) Substantial evidence supports the ALJ in this regard. (See, e.g., Tr. 283, 380) Plaintiff's own argument admits that Plaintiff was, at times, not compliant with her medication and other medical advice. The fact that there were also periods in which Plaintiff's compliance was good or fair misses the point. Thus, the ALJ did not err in relying, in part, on Plaintiff's non-compliance in discounting her credibility. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001); Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001). Because the ALJ gave "good reasons" for discrediting Plaintiff's subjective complaints, this Court will defer to the ALJ. See Andrews, 791 F.3d at 929; Gregg, 354 F.3d at 713.

### B.     RFC Assessment

Plaintiff contends that substantial evidence does not support the ALJ's assessment of her RFC. In this regard, Plaintiff notes that the ALJ gave great weight to the opinions of the two consultative sources, including Dr. Leung. Dr. Leung conducted a physical examination. The ALJ's decision indicated that Dr. Leung limited Plaintiff to sedentary work. As Plaintiff correctly points out, however, Dr. Leung's report indicated that Plaintiff had the ability to lift and carry up to ten pounds frequently, and up to fifty pounds occasionally. (Tr. 374) Dr. Leung also concluded that Plaintiff could sit for eight hours, stand for four hours, and walk for two hours in a workday. (Tr. 375) Plaintiff notes that such restrictions indicate an ability to perform work at the medium exertion level, which is higher than the sedentary level found by the ALJ. Thus, according to Plaintiff, it is unclear what, if any, evidence the ALJ relied on in making her RFC determination. Plaintiff also argues that, "[d]espite the evidence and the ALJ's determination

that Plaintiff's diabetes and neuropathy is severe, it is not clear what, if any limitations result

[from those impairments] and how they affect Plaintiff's RFC."  [ECF No. 20 at 4]

A claimant's RFC is the most that claimant can do despite her limitations.  See 20 C.F.R.

§ 404.1545(a)(1).  In determining a claimant's RFC, the ALJ should consider "all the evidence in

the record, including the medical records, observations of treating physicians and others, and an

individual's own description of [her] limitations."  Krogmeier v. Barnhart, 294 F.3d 1019, 1024

(8th Cir. 2002) (internal quotations omitted).  While the RFC determination occurs at step four,

where the claimant has the burden of proof, the Eighth Circuit has explained that the ALJ has

primary responsibility for determining the RFC.  Id.

As an initial matter, to the extent Plaintiff's argument may be read to suggest that an

ALJ's RFC must correspond to one of the medical opinions in the record, her argument is

incorrect.  See Martise, 641 F.3d at 927 (explaining that ALJ's are not required to "rely entirely

on a particular physician's opinion or choose between the opinions [of] any of the claimant's

physicians") (internal quotations omitted).

The record before the Court indicates that the ALJ conducted a thorough and searching

review of the record in making her RFC determination.  See id.  The ALJ considered a detailed

review of the medical evidence, as well as third-party information.  (Tr. 17-20)  As discussed

above, in conducting her analysis, the ALJ gave detailed consideration to Plaintiff's credibility.

It is also true, however, that Dr. Leung concluded that Plaintiff retained some of the physical

abilities consistent with the medium exertion level.  But that discrepancy between the RFC and

Dr. Leung's opinion focuses on only part of Dr. Leung's opinion.  More importantly, the fact that

the ALJ ultimately imposed greater limitations on Plaintiff's RFC resulted in no prejudice to

Plaintiff.  Thus, the fact that the ALJ relied on an opinion that included fewer restrictions on

Plaintiff's RFC amounts to no more than a harmless error in opinion writing technique. See Byes v. Astrue, 687 F.3d 913, 918 (8th Cir. 2012); Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008).

Plaintiff, however, points to a more concrete concern regarding her RFC. According to Plaintiff, the RFC stated in the ALJ's decision does not appear to include any limitation related to Plaintiff's severe impairment of neuropathy. Having reviewed the ALJ's decision and the record, the Court concludes that substantial evidence does, in fact support the ALJ's RFC assessment, even in view of Plaintiff's neuropathy. Furthermore, any error would be harmless in this case.

At the time of the administrative hearing in this matter, the ALJ included restrictions relative to Plaintiff's neuropathy and shoulder problem. The hypothetical question posed to the VE asked the VE to consider a person who, among other limitations, was limited to occasional fingering and handling with both upper extremities. (Tr. 52) The record is clear that the ALJ's decision to deny benefits at step five was based on the VE's testimony in response to that hypothetical question. (Tr. 21)

After the administrative hearing, however, the ALJ referred Plaintiff to consultative examiner Dr. Leung. Dr. Leung observed, among other things, that Plaintiff: (1) retained a full range of motion in her joints; (2) had no muscle atrophy; (3) could oppose her thumb to each finger on both hands; (4) had full pinch, arm, leg, and grip strength; and (5) no difficulties getting on or off the exam table. (Tr. 370) Dr. Leung noted that Plaintiff had decreased sensation to light touch in her hands, and moderate to severe decreased vibratory sensation. (Id.) Although Dr. Leung agreed that Plaintiff exhibited signs of neuropathy in her hands and feet, "[s]he was able to manipulate a small object with her hands fairly well." (Tr. 371) For example,

Plaintiff "was able to pick up a penny off of the table with both hands."  (Tr. 369)  Similarly, Dr. Leung concluded that Plaintiff retained the ability in both hands for frequent handling, fingering, and feeling.  (Tr. 376)  Therefore, substantial medical evidence, received after the administrative hearing, supported the ALJ's conclusion that the actual effects of Plaintiff's neuropathy did not require the imposition of any exertional restrictions beyond those associated with sedentary work.  See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (explaining that limiting a claimant to sedentary work is, by itself, "a significant limitation").

Moreover, even if the ALJ erred and should have included an additional restriction relative to Plaintiff's neuropathy, such an error would be harmless in this case.  First, one of the representative jobs proffered by the VE in this case was for a surveillance system monitor.  According to the VE, that job required "no handling, fingering, reaching or feeling."  (Tr. 53) Thus, Plaintiff's neuropathy would not preclude her from working as a surveillance system monitor.[5]  Second, the question actually posed to the VE included a restriction relative to Plaintiff's neuropathy – "occasional fingering and handling with both upper extremities."  (Tr. 52)  Thus, the Court can be confident in this case that any error in the ALJ's alleged failure to include a specific limitation to address Plaintiff's neuropathy – other than sedentary work – would be harmless.  See Byes, 687 F.3d at 918.

C.   **Alleged Step Five Errors**

Plaintiff also contends that the ALJ erred at step five because "[t]he jobs that the VE identified cannot be performed within the RFC that the ALJ found …."  [ECF No. 20 at 5]  In this regard, Plaintiff raises two different arguments.  First, relying on an undated report from a third-party vocational expert, Plaintiff argues that the Dictionary of Occupational Titles ("DOT")

_____

[5]  The Court addresses Plaintiff's other concerns regarding the surveillance system operate job in greater detail below.

requirements for surveillance system monitor are inaccurate. According to Plaintiff, the

surveillance system monitoring position is actually light work, requires more training, and

involves more reaching, handling and fingering than indicated in the DOT. [ECF No. 20 at 6]

Second, Plaintiff argues that the jobs of call out operator and surveillance system monitor both

require a higher reasoning level than would be possible for a person such as Plaintiff, who would

be limited to simple work. [Id.] As explained below, neither of these arguments is persuasive in

this case.

### 1.    Bob Hammond Report

Plaintiff takes issue with the ALJ's reliance on the VE's testimony at step five, that

Plaintiff retained the RFC to work as a surveillance system monitor. Plaintiff's argument in this

regard rests on a report from Bob Hammond, of Hammond Vocational Consultants, entitled

"Surveillance System Monitor, a Systematic Review of the Issues Encountered by a Vocational

Expert in Contested Social Security Disability Hearings, a Non-Scientific Approach." In this

undated, and non-scientific, report the author concludes that "the job of surveillance system

monitor (SSM) does not exist as it is described in the DOT." [ECF No. 20 at 5-6]

As the Commissioner correctly notes, the DOT is "the Commissioner's primary source of

reliable job information." See Fines v. Apfel, 149 F.3d 893, 895 (8th Cir. 1998) (citing 20

C.F.R. § 404.1566(d)(1)). Plaintiff has not identified any authority for her proposition that the

admittedly unscientific report, from a single source, somehow requires this Court to reject an

ALJ's good-faith reliance on the DOT. For example, Plaintiff has not identified any cases in

which this report was found sufficient to reverse an ALJ's otherwise justified reliance on a VE's

testimony. Moreover, the Hammond report is undated. It appears from context that the research

for the Hammond report was conducted in 2008-09. (Tr. 405-06) Plaintiff offers no information

at all to suggest that, even if the report was accurate at the time, it remains accurate now. More importantly, the information in question was presented to the Commissioner's Appeals Council and rejected.

Thus, there is no credible argument that the VE's testimony was in conflict, either factually or legally, with the DOT. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff retains the RFC to perform the work of a surveillance system monitor, as that job is defined in the DOT. Nothing more was required of the ALJ.

## 2. Reasoning Level Requirements

Plaintiff also argues that the ALJ's reliance on the VE's testimony was flawed because the two representative jobs identified – surveillance system monitor and call out operator – both require level three reasoning, while Plaintiff was limited to simple, repetitive tasks. [ECF No. 20 at 6] Plaintiff notes that level three reasoning requires "the ability to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations." [Id.] According to Plaintiff, this type of reasoning exceeds her RFC, which limits her to simple, repetitive tasks. In essence, Plaintiff argues that there was an unresolved conflict between the DOT requirements and the VE's testimony. See Moore v. Colvin, 769 F.3d 987 (8th Cir. 2014).

In support of her argument, Plaintiff refers the Court to a couple of cases from the Tenth Circuit – Hackett v. Barnhart, 395 F.3d 1168 (10th Cir. 2005), and DeQuinze v. Astrue, No. 09-cv-02874-PAB (D. Colo. Jan. 11, 2011). While these cases may lend support to Plaintiff's argument, her position has received a less receptive audience in this Circuit. In fact, this Court recently rejected substantially the same argument on substantially similar facts.

In Filbert v. Colvin, an ALJ concluded that the claimant was limited to work that required

only "simple instructions and non-detailed tasks."  2015 WL 1474873 *9, No. 4:14 CV 209 JAR

(E.D. Mo. Mar. 31, 2015).  In response to a hypothetical question from the ALJ, a VE opined

that such a claimant could perform as a mail sorter or surveillance system operator.  Id. at *9-10.

Like Plaintiff herein, the claimant in Filbert argued that the ALJ erred in relying on the VE's

opinion because the jobs in question required level three reasoning, which was allegedly

inconsistent with an RFC limited to simple work.  Id. at *10.  In Filbert, the Honorable John A.

Ross, United States District Judge, rejected substantially the same the argument raised herein,

explaining that "[t]he law in this Circuit is clear – any potential inconsistency between a

reasoning level of three and the ability to follow only simple instructions on non-detailed tasks is

not a conflict."  Id. at *11 (citing Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) Welsh v.

Colvin, 765 F.3d 926, 930 (8th Cir. 2014)).  This undersigned agrees.

     The Court concludes, therefore, that the alleged inconsistency between reasoning level

three and Plaintiff's RFC does not rise to a sufficient conflict as to require remand.

     **D.**    **Weight of the Evidence – New Psychiatric Evidence**

     Finally, Plaintiff argues that, additional evidence submitted to the Appeals Council (and

available to this Court), undermine the ALJ's decision.  In this regard, Plaintiff relies on an

opinion and records from Dr. John Crain, M.D., a psychiatrist who began treating Plaintiff after

the ALJ's adverse decision in this matter.  [ECF Doc. 20 at 7]  Dr. Crain diagnosed Plaintiff with

bipolar disorder.  (Tr. 388)  According to Dr. Crain, Plaintiff was unable to work due to

problems with memory, attention, and dealing with normal stress.  (Tr. 390-92)  Plaintiff argues

that the information from Dr. Crain is supported by more timely records from her primary care

physician, Dr. Rickmeyer.  The Court finds this argument unpersuasive.

     "Under the regulations, the Appeals Council must evaluate the entire record, including

any new and <u>material</u> evidence submitted to it after the ALJ's decision." <u>Perks v. Astrue</u>, 687

F.3d 1086, 1093 (8th Cir. 2012) (emphasis supplied) (citing 20 C.F.R. § 404.970(b)). "The

Appeals Council 'shall consider the additional evidence only where it relates to the period on or

before the date of the [ALJ] hearing decision.'" <u>Id.</u> Stated differently, new "[e]vidence is

material if it is 'relevant to claimant's condition for the time period for which benefits were

denied.'" <u>Roberson v. Astrue</u>, 481 F.3d 1020, 1026 (8th Cir. 2007) (quoting <u>Bergmann v. Apfel</u>,

207 F.3d 1065, 1069 (8th Cir. 2000)).

In <u>Roberson</u>, the Eighth Circuit considered a similar situation to the instant case. In

<u>Roberson</u>, a claimant submitted additional records from her treating psychiatrist which were

prepared after the ALJ denied her claim. <u>See</u> 481 F.3d at 1026. The Appeals Council noted that

the new medical records described the claimant's condition at the time they were prepared, "not

on an earlier date, and were therefore not material …." <u>Id.</u>

In the present case, Plaintiff's new evidence was submitted to, and considered by, the

Appeals Council after the ALJ issued the adverse decision. As in <u>Roberson</u>, Plaintiff's new

evidence is not material because it does not relate to the time period for which benefits were

denied. The Appeals Council aptly noted that, "This new information is about a later time.

Therefore, it does not affect the decision about whether you were disabled on or before [the

ALJ's adverse decision]…. If you want [the Commissioner] to consider whether you were

disabled after [the ALJ's decision], you need to apply again." (Tr. 2)

Having reviewed the new evidence from Dr. Crain, the Court agrees with the Appeals

Council. The information in question was not relevant and material because Dr. Crain's opinions

did not consider Plaintiff's condition during a period on or before the ALJ's decision. In fact,

Dr. Crain never examined Plaintiff prior to the ALJ's decision. Dr. Crain first examined Plaintiff

in June 2013, more than six months after the ALJ denied Plaintiff's claim. (Tr. 388) Dr. Crain himself stated that he can offer no opinion as to Plaintiff's condition prior to June 2013.[6] (Tr. 392) Thus, as in Roberson, the new medical evidence provided to the Appeals Council is not material in the legal sense. Accordingly, Plaintiff's argument that Dr. Crain's opinions undermine the ALJ's decision is fatally flawed and her fourth point of error must be denied.

Substantial evidence supports the ALJ's conclusion that Plaintiff retained the RFC for simple repetitive tasks. The Court is mindful that it was Plaintiff's burden to prove her disability at steps one through four. It was not until well after the ALJ's adverse decision that she proffered the subject psychiatric evidence from Dr. Crain. Plaintiff sought almost no treatment from a psychiatrist or psychologist for her alleged psychiatric problems prior to her administrative hearing in this matter. Nonetheless, the ALJ developed the record in this regard by relying on an examination of Plaintiff by psychiatric consultative examiner Paul Rexroat, Ph.D.

The ALJ gave great weight to the opinions of Dr. Rexroat, including his opinion that Plaintiff could perform at least simple tasks. (Tr. 19-20) Substantial evidence supports the ALJ in this regard. Dr. Rexroat examined Plaintiff in May 2011, prior to the administrative hearing in this matter. (Tr. 341) Dr. Rexroat diagnosed Plaintiff with major depression and anxiety. (Tr. 344) According to Dr. Rexroat, Plaintiff could understand and remember simple instructions, sustain an appropriate concentration and persistence with simple tasks, and interact socially.

---

[6] Dr. Crain's opinions are included in Mental Residual Functional Capacity Questionnaire, dated January 28, 2014. (Tr. 388-92) The final question on the questionnaire asked: "What is the earliest date that the above description of limitations applies?" In response, Dr. Crain noted "1st visit is all I can attest to." (Tr. 392) Plaintiff's first visit was on June 27, 2013. Thus, by its own terms, Dr. Crain's Mental Residual Functional Capacity Questionnaire did not cover the time period for which benefits were denied and, therefore, was not material. Roberson, 481 F.3d at 1026.

According to Dr. Rexroat, Plaintiff retained good social skills.  (Tr. 343)

For the foregoing reasons, substantial evidence supports the ALJ's RFC determination. Moreover, the new medical evidence proffered by Plaintiff is not material.

**VI.**    **Conclusion**

For the reasons set forth above, the Commissioner's decision denying benefits is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.


/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  5th  day of November, 2015.